**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| DEBORAH LEPPERT and ZACHARY CHERNIK, individually and on behalf of a class of similarly situated individuals, | ) Case No. 1:18-cv-04347 ) ) |
| Plaintiffs, | ) Honorable Virginia M. Kendall ) |
| v. | ) ) |
| CHAMPION PETFOODS USA INC. and CHAMPION PETFOODS LP, | ) ) ) |
| Defendants. | ) ) ) ) |

**DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES
TO PLAINTIFF'S FIRST AMENDED COMPLAINT**

Defendants Champion Petfoods USA Inc. and Champion Petfoods LP (collectively, "Champion") hereby submit their Answer and Affirmative Defenses to the First Amended Class Action Complaint filed by Plaintiff Zachary Chernik ("Plaintiff").

**GENERAL DENIAL**

Except as otherwise expressly stated herein, Champion denies each and every allegation in the First Amended Class Action Complaint (the "FAC"), including, without limitation, any allegations contained in the headings or subheadings. Further, Champion objects to Plaintiff's defined term "Contaminated Cat Foods," as Champion denies that any of its cat foods are contaminated. Champion reserves the right to seek to amend and/or supplement their Answer as may be necessary and appropriate.

**ANSWER**

1. Plaintiff Zachary Chernik ("Plaintiff Chernik"), individually and on behalf of all others similarly situated, by and through their undersigned attorneys, brings this First Amended

Class Action Complaint against Defendants Champion Petfoods USA, Inc. ("Defendant Champion USA") and Champion Petfoods LP ("Defendant Champion Canada") (together, "Defendants"), for their negligent, reckless, and/or intentional practice of misrepresenting, failing to test for, and failing to fully disclose the presence and/or risk of inclusion in their pet food of heavy metals, toxins, Bisphenol A ("BPA"), non-regional and non-fresh ingredients, and/or unnatural or other ingredients that do not conform to the labels, packaging, advertising, and statements throughout the United States.  Plaintiff seeks both injunctive and monetary relief on behalf of the proposed Class (defined below), including:  (i) requiring full disclosure of all such substances and ingredients in Defendants' marketing, advertising, and labeling; (ii) prohibiting the utilization of the term "Fresh Regional Ingredients" and also suppliers who are street renderers or rendering facilities that accept euthanized animals; (iii) requiring testing of all ingredients and final products for such substances; and (iv) restoring monies to the members of the proposed Class.  Plaintiff alleges the following based upon personal knowledge as well as investigation by his counsel and discovery and as to all other matters, upon information and belief.

> **Answer:**      Champion admits that Plaintiff purports to bring this FAC on behalf of himself and all others similarly situated and seeks both monetary and injunctive relief. Champion lacks knowledge or information sufficient to form a belief as to whether Plaintiff's allegations are based on personal knowledge or investigation by counsel and denies the allegations related thereto.  Champion denies that the putative class could ever be certified in this action or that Plaintiff or the putative class are entitled to any damages or injunctive relief.  Champion denies the remaining allegations in Paragraph 1 of the FAC.

2.      Defendants manufacture, market, advertise, label, distribute, and sell pet food under the brand names Acana and Orijen throughout the United States, including in this District.

**Answer:**    Champion admits that it sells pet food under the brand names ACANA and ORIJEN to specialty retailers throughout the United States, including in this district. Champion denies the remaining allegations in Paragraph 2 of the FAC.

3.    Defendants have created a niche in the pet food market by allegedly "making biologically 'appropriate' pet food—as close to what animals would eat in nature as possible— and producing it using fresh, natural ingredients …" They then charge a premium for this purportedly higher-quality food.  The founder of the company, Peter Muhlenfeld, said, "Our core family beliefs are … entrenched in the company, and that is to make the very best food."

**Answer:**    Champion denies the allegations in the first sentence of Paragraph 3 of the FAC. Champion lacks knowledge or information sufficient to form a belief concerning allegations related to Peter Muhlenfeld's statement and therefore denies the allegations related thereto. Champion denies the remaining allegations in Paragraph 3 of the FAC.

4.    Defendants tout that "Biologically Appropriate™ ORIJEN represents a new class of food, designed to nourish dogs and cats according to their evolutionary adaptation to a diet rich and diverse in fresh meat and protein" and that it is "[t]rusted by pet lovers everywhere."

**Answer:**    Champion admits that the statement "Biologically Appropriate ORIJEN represents a new class of food, designed to nourish dogs and cats according to their evolutionary adaptation to a diet rich and diverse in fresh meat and protein[]" has appeared at times on ORIJEN's website and the statement "trusted by pet lovers everywhere" has appeared at times on some of Champion's product packaging.

5.    Defendants' packaging and labels further emphasize fresh, quality, and properly sourced ingredients and even declares their cat food has "ingredients we love":

**Answer:**      Champion admits that the statement "ingredients we love" has appeared at times on some of Champion's product packaging. Champion admits that the image below Paragraph 5 of the FAC is a package of ORIJEN cat food. Champion denies the remaining allegations in Paragraph 5 of the FAC.

6.      Yet nowhere in the labeling, advertising, statements, and/or packaging do Defendants disclose that the Contaminated Cat Foods (defined herein) contain and/or have a high risk of containing heavy metals, toxins, BPA, non-regional and non-fresh ingredients, and/or unnatural or other ingredients that do not conform to the labels, packaging, advertising, and statements nor do they disclose that they do not adequately test their ingredients and final products for contaminants.

**Answer:**      Champion denies the allegations in Paragraph 6 of the FAC.

7.      Indeed, the Contaminated Cat Foods have been shown to contain the following levels of arsenic, mercury, lead, cadmium, and/or BPA—all known to pose health risks to humans and animals, including cats:

**Answer:**      Champion lacks knowledge or information sufficient to form a belief concerning the data in the chart below Paragraph 7 of the FAC, and therefore denies those allegations. Champion denies the remaining allegations in Paragraph 7 of the FAC.

8.      Moreover, Defendants themselves admit that all formulations of their dog and cat food in fact contain heavy metals yet failed to update the packaging to reflect this admission.

**Answer:**      Champion denies the allegations in Paragraph 8 of the FAC.

9.      Defendants do not test all of their ingredients or finished products for heavy metals, toxins, BPA, and/or unnatural or other ingredients.

**Answer:**      Champion denies the allegations in Paragraph 9 of the FAC.

4

10.     Yet, Defendants promise, represent, mislead, label, and/or advertise that the Contaminated Cat Foods are free of heavy metals, toxins, BPA, and/or unnatural or other ingredients by touting the Contaminated Cat Food as "Biologically Appropriate™" (a nutritional statement) and assuring the food represents an evolutionary diet that mirrors that of a wildcat – —— free of anything "nature didn't intend your cat to eat:"

**Answer:**     Champion denies the allegations in Paragraph 10 of the FAC.

11.     Defendants assert that: "ACANA foods incorporate meats, organs and cartilage in WholePrey ratios that mirror Mother Nature, delivering nutrients naturally.  So you won't find long lists of synthetic supplements." Defendants similarly claim "ORIJEN mirrors the evolutionary diet with WholePrey ratios that deliver nutrients naturally, reducing the need to add a long list of synthetic vitamins, minerals and amino acids, so only choline, zinc and copper are added."

**Answer:**     Champion denies the allegations in Paragraph 11 of the FAC on the grounds that footnotes 4 and 5 referenced in the FAC, where presumably Plaintiff included citations to where these statements came from, are missing from FAC.

12.     Defendants assert that: "Virtually All Of The Nutrients In Acana Are Natural And Not Synthetic." Defendants make a similar claim to the Orijen Cat Foods in maintaining that the main source of any nutrient in Orijen is from a natural source.

**Answer:**     Champion admits that the statement in the first sentence of Paragraph 12 has appeared on ACANA's website from time to time. Champion denies the remaining allegations in Paragraph 12 of the FAC.

13.     Defendants mislead consumers by marketing that the Contaminated Cat Foods are made from Fresh and Regional ingredients that are delivered daily.  Indeed, this misrepresentation

is made numerous times and in numerous ways on the packaging. Defendants go as far as to include photos of local Kentucky or neighboring state suppliers on the packaging. In reality, Defendants source ingredients both internationally (e.g. New Zealand, India, France, Denmark, Ireland, Australia, Canada) and across the United States (Idaho, Ohio, Midwest, West Coast, Northeast). Additionally, Defendants utilized frozen products (some of which have been stored for years) and store the delivered meals at their Kitchens for several months prior to use.

**Answer:** Champion admits that from time to time its packaging included photos of Kentucky and neighboring state ingredient suppliers. Champion admits that it sources certain ingredients for certain diets internationally and in the United States. Champion denies the remaining allegations in Paragraph 13 of the FAC.

14. Defendants also outsource the production of their meals despite claiming the Contaminated Cat Foods are "Never Outsourced." Moreover, Defendants have failed to inspect or visit the ingredient suppliers of certain meals to ensure that the quality and source of the ingredients matches the representations made to consumers.

**Answer:** Champion denies the allegations in Paragraph 14 of the FAC.

15. Plaintiff brings this action individually and on behalf of all other similarly situated consumers within Illinois who purchased the Contaminated Cat Foods, in order to cause the disclosure of the presence and/or risk of inclusion of heavy metals, toxins, BPA, non-regional and non-fresh ingredients, and/or unnatural or other ingredients that do not conform to the labels, packaging, advertising, and statements in the Contaminated Cat Foods, to correct the false and misleading perception Defendants have created in the minds of consumers that the Contaminated Cat Foods are healthy, nutritious, superior quality, natural, and/or unadulterated, and made with

fresh and regional ingredients that were never outsourced and to obtain redress for those who have purchased the Contaminated Cat Foods.

> **Answer:** Champion denies the allegations in Paragraph 15 of the FAC.

## JURISDICTION AND VENUE

16.     This Court has original jurisdiction over all causes of action asserted herein under the Class Action Fairness Act, 28 U.S.C. §1332(d)(2), because the matter in controversy exceeds the sum or value of $5,000,000 exclusive of interest and costs and more than two-thirds of the Class reside in states other than the states in which Defendants are citizens and in which this case is filed, and therefore any exemptions to jurisdiction under 28 U.S.C. §1332(d) do not apply.

> **Answer:** Champion admits only that the Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(d). Champion denies that a class could ever be certified in this action or that Plaintiff or the putative class are entitled to any damages.

17.     Venue is proper in this Court pursuant to 28 U.S.C. §1391, because Plaintiff resides and suffered injury as a result of Defendants' acts in this District, many of the acts and transactions giving rise to this action occurred in this District, Defendants conduct substantial business in this District, Defendants have intentionally availed themselves of the laws and markets of this District, and Defendants are subject to personal jurisdiction in this District.

> **Answer:** Champion admits only that venue is proper in this Court, and denies the remaining allegations in Paragraph 17 of the FAC.

## PARTIES

18.     Plaintiff Zachary Chernik ("Plaintiff Chernik") is, and at all times relevant hereto has been, a citizen of the state of Illinois.  Plaintiff Chernik purchased the following Contaminated Cat Foods for his cats, Addicus, a Persian who died in June 2008, and Ashes, a 9-year-old domestic shorthair:  Orijen Six Fish Dry Cat Food, Orijen Regional Red, Acana Pacifica, and Acana Wild

Prairie.  Plaintiff Chernik purchased a 15-pound bag of the Contaminated Cat Foods approximately every 10-12 weeks beginning in 2006 until approximately October 2016.  Plaintiff Chernik generally bought the cat food at his local Pet Food Experts, Zeus and Company Pet Supplies, and Woodstock Feed and Seed.  Prior to purchasing the Contaminated Cat Foods, Plaintiff Chernik saw the nutritional claims on the packaging, which he relied on when deciding whether to purchase the Contaminated Cat Foods.  During that time, based on the false and misleading claims, representations, advertisements and other marketing by Defendants, Plaintiff Chernik was unaware that the Contaminated Cat Foods contained any level of heavy metals, chemicals, or toxins and would not have purchased the food if that had been fully disclosed.

> **Answer:**     Champion lacks knowledge or information sufficient to form a belief as to the allegations in the first four sentences in Paragraph 18 of the FAC and therefore denies them. Champion denies the remaining allegations in Paragraph 18 of the FAC.

19.    As the result of Defendants' negligent, reckless, and/or knowingly deceptive conduct as alleged herein, Plaintiff Chernik was injured when he paid a purchase price or a price premium for the Contaminated Cat Foods that did not deliver what was promised.  He paid the premium price on the assumption that the labeling of the Contaminated Cat Foods was accurate and that it was healthy, nutritious, superior quality, natural, and/or unadulterated, and made with fresh and regional ingredients that were never outsourced.  Plaintiff Chernik would not have paid this money had he known that the Contaminated Cat Foods contained and/or had risk of inclusion of levels of the heavy metals, toxins, BPA, non-regional and non-fresh ingredients, and/or unnatural or other ingredients that do not conform to the labels, packaging, advertising, and statements.  Plaintiff Chernik was further injured when he paid a premium for the Contaminated Cat Foods that have no or *de minimis* value based on the presence of the alleged heavy metals,

toxins, BPA, and/or unnatural or other ingredients that do not conform to the labels, packaging, advertising, and statements. Damages can be calculated through expert testimony at trial. Further, should Plaintiff Chernik encounter the Contaminated Cat Foods in the future, he could not rely on the truthfulness of the packaging, absent corrective changes to the packaging and advertising of the Contaminated Cat Foods.

**Answer:**    Champion denies the allegations in Paragraph 19 of the FAC.

20.    Defendant Champion USA is incorporated in Delaware. Its headquarters and principal place of business, as of March 2016, is located at 12871 Bowling Green Road, Auburn, Kentucky 42206. Since that time, all Contaminated Cat Foods sold in the United States are manufactured, sourced, and sold by Champion USA.

**Answer:**    Champion admits the allegations in the first two sentences in Paragraph 20 of the FAC. Champion denies the remaining allegations in Paragraph 20 of the FAC.

21.    Defendant Champion Canada is a Canadian limited partnership with its headquarters and principal place of business located at 11403-186 St NW, Edmonton, Alberta T5S 2W6. Defendant Champion Canada wholly owns, operates, and/or controls Defendant Champion USA. Prior to March 2016, all Contaminated Cat Foods sold in the United States were manufactured, sourced, and sold by Champion Canada.

**Answer:**    Champion denies the allegation in Paragraph 21 of the FAC that it sells "Contaminated Cat Foods." Champion admits the remaining allegations in Paragraph 21 of the FAC.

22.    Defendants formulate, develop, manufacture, label, distribute, market, advertise, and sell the Contaminated Cat Foods under the cat food brand names Orijen and Acana throughout the United States, including in this District, during the Class Period (defined below). The

advertising, labeling, and packaging for the Contaminated Cat Foods, relied upon by Plaintiff, was prepared, reviewed, and/or approved by Defendants and their agents, and was disseminated by Defendants and their agents through marketing, advertising, packaging, and labeling that contained the misrepresentations alleged herein. The marketing, advertising, packaging, and labeling for the Contaminated Cat Foods was designed to encourage consumers to purchase the Contaminated Cat Foods and reasonably misled the reasonable consumer, *i.e.*, Plaintiff and the Class, into purchasing the Contaminated Cat Foods. Defendants own, manufacture, and distribute the Contaminated Cat Foods and created, allowed, negligently oversaw, and/or authorized the unlawful, fraudulent, unfair, misleading, and/or deceptive labeling and advertising for the Contaminated Cat Foods. Defendants are responsible for sourcing ingredients, manufacturing the products, and conducting all relevant quality assurance protocols, including testing, for the ingredients and finished Contaminated Cat Foods.

 **<u>Answer:</u>** Champion admits only that that it sells ORIJEN and ACANA cat food products to distributors throughout the United States. Champion denies the remaining allegations in Paragraph 22 of the FAC.

**<u>FACTUAL ALLEGATIONS</u>**

**The Contaminated Cat Foods**

 23. The Contaminated Cat Foods include the following:

  (a) Acana Regionals Appalachian Ranch with Red Meats and Freshwater Catfish Dry Cat Food

  (b) Acana Regionals Grasslands with Lamb, Trout, and Game Bird Dry Cat Food

  (c) Acana Regionals Meadowland with Poultry, Freshwater Fish, and Eggs Dry Cat Food

10

(d)    Acana Regionals Pacifica with Herring, Pilchard, Flounder, Hake, and Rockfish Dry Cat Food

(e)    Acana Regionals Wild Atlantic New England Fish and Fresh Greens Dry Cat Food

(f)    Orijen Cat and Kitten Dry Cat Food

(g)    Orijen Regional Red Angus Beef, Wild Boar, Goat, Lamb, Pork, Mackerel Dry Cat Food

(h)    Orijen Six Fish New England Mackerel, Herring, Flounder, Redfish, Monkfish, Silver Hake Dry Cat Food

(i)    Orijen Tundra Boer Goat, Wild Boar, Venison, Arctic Char, Free-Run Duck, and Mutton

(j)    Orijen Fit and Trim Fresh Free-run Chicken and Turkey, Nest-Laid Eggs, and Wild-Caught Fish

**<u>Answer:</u>**    Champion admits that the products named in subparagraphs (a) through (j) are produced by Champion (though not by both kitchens) and the images in subparagraphs (a) through (j) are accurate representations of the respective packaging for the products at certain times, but denies that any of these products were "Contaminated" and any other allegations in Paragraph 23 of the FAC.

I.    **THE INCLUSION AND/OR RISK OF INCLUSION OF HEAVY METALS, TOXINS, BPA, AND ANY OTHER CHEMICALS IN THE CONTAMINATED CAT FOODS IS MATERIAL BASED ON KNOWN RISKS**

A.    **Heavy Metals**

24.    Exposure to toxins like arsenic, mercury, cadmium, and lead can cause serious illness in humans and animals. A company should be vigilant to take all reasonable steps to avoid causing family pets to ingest these toxins.

**Answer:**    Champion admits that arsenic, mercury, cadmium, and lead can cause serious illness to humans and animals when they are exposed to quantities which far exceed the quantities in Champion's cat food. Champion states that the remaining allegations are vague and not directed towards Champion and therefore the remaining allegations in Paragraph 24 of the FAC are denied.

25.    The Contaminated Cat Foods contain arsenic, which is a carcinogen and toxin. Arsenic is a semi-metal element in the periodic table and does not degrade or disappear. It is odorless and tasteless. Arsenic occurs in the environment as an element of the earth's crust; it is found in rocks, soil, water, air, plants, and animals. Arsenic is combined with other elements such as oxygen, chlorine, and sulfur to form inorganic arsenic compounds. Historically, arsenic compounds were used in many industries, including: (i) as a preservative in pressure-treated lumber; (ii) as a preservative in animal hides; (iii) as an additive to lead and copper for hardening; (iv) in glass manufacturing; (v) in pesticides; (vi) in animal agriculture; and (vii) as arsine gas to enhance junctions in semiconductors. The United States has canceled the approvals of some of these uses, such as arsenic-based pesticides, for health and safety reasons. Some of these cancellations were based on voluntary withdrawals by producers. For example, manufacturers of arsenic-based wood preservatives voluntarily withdrew their products in 2003 due to safety concerns, and the U.S. Environmental Protection Agency ("EPA") signed the cancellation order. In the Notice of Cancellation Order, the EPA stated that it "believes that reducing the potential residential exposure to a known human carcinogen is desirable."

**Answer:**    Champion admits that the raw materials used in making Champion's cat food may contain small quantities of organic arsenic that are naturally occurring in those raw materials. Champion states that the remaining allegations in Paragraph 25 of the FAC

are not directed towards Champion and therefore no response thereto is required. To the extent a response is required, Champion lacks knowledge or information sufficient to form a belief concerning the remaining allegations in Paragraph 25 of the FAC and therefore denies them.

26.    Inorganic arsenic is highly toxic and a known cause of human cancers.   The association between inorganic arsenic and cancer is well documented.  As early as 1879, high rates of lung cancer in miners from the Kingdom of Saxony were attributed, in part, to inhaled arsenic. By 1992, the combination of evidence from Taiwan and elsewhere was sufficient to conclude that ingested inorganic arsenic, such as is found in contaminated drinking water and food, was likely to increase the incidence of several internal cancers.  The scientific link to skin and lung cancers is particularly strong and longstanding, and evidence supports conclusions that arsenic may cause liver, bladder, kidney, and colon cancers as well.

**Answer:**       Champion states that the allegations in Paragraph 26 of the FAC are not directed towards Champion and therefore no response thereto is required. To the extent a response is required, Champion lacks knowledge or information sufficient to form a belief concerning the allegations in Paragraph 26 of the FAC and therefore denies them.

27.    Based on the risks associated with exposure to higher levels of arsenic, both the EPA and FDA have set limits concerning the allowable limit of arsenic at 10 parts per billion ("ppb") for human consumption in apple juice (regulated by the FDA) and drinking water (regulated by the EPA).

**Answer:**       Champion states that the regulation cited to in Paragraph 27 of the FAC speaks for itself, is the best evidence of its terms and content, and no response to the

allegations in Paragraph 27 of the FAC is required. To the extent a response is required, Champion denies that it is in violation of the regulation cited in Paragraph 27 of the FAC.

28.     The Contaminated Cat Foods also contain lead, which is another carcinogen and developmental toxin known to cause health problems. Lead is a metallic substance formerly used as a pesticide in fruit orchards, but the use of such pesticides is now prohibited in the United States.

**Answer:**     Champion admits that the raw materials used in making Champion's cat food may contain small quantities of lead that are naturally occurring in those raw materials. Champion states that the remaining allegations in Paragraph 28 of the FAC are not directed towards Champion and therefore no response thereto is required. To the extent a response is required, Champion lacks knowledge or information sufficient to form a belief concerning the remaining allegations in Paragraph 28 of the FAC and therefore denies them.

29.     Lead poisoning can occur from ingestion of food or water containing lead. Lead, unlike many other poisons, builds up in the body over time as the person is exposed to and ingests it, resulting in a cumulative exposure which can, over time, become toxic and seriously injurious to health. Chronic or acute exposure to lead can lead to the development of chronic poisoning, cancer, developmental and reproductive disorders, severe brain and kidney damage, and untimely death.

**Answer:**     Champion states that the allegations in Paragraph 29 of the FAC are not directed towards Champion and therefore no response thereto is required. To the extent a response is required, Champion lacks knowledge or information sufficient to form a belief concerning the allegations in Paragraph 29 of the FAC and therefore denies them.

30.     The FDA has set standards that regulate the maximum ppb of lead permissible in water: bottled water cannot contain more than 5 ppb of total lead or 10 ppb of total arsenic. See 21 C.F.R. §165.110(b)(4)(iii)(A)(2016).

**Answer:**     Champion states that the regulation cited to in Paragraph 30 of the FAC speaks for itself, is the best evidence of its terms and content, and no response to the allegations in Paragraph 30 of the FAC is required. To the extent a response is required, Champion denies that it is in violation of the regulation cited in Paragraph 30 of the FAC.

31.     The Contaminated Cat Foods also contain mercury, a known toxin which can damage the cardiovascular system, nervous system, kidneys, and digestive tract in cats. The impact of the various ways humans and animals are exposed to and ingest mercury has been studied for years. In fact, in as early as 1997, the EPA issued a report to Congress that detailed the health risks to both humans and animals.

**Answer:**     Champion admits that the raw materials used in making Champion's cat food may contain small quantities of mercury that are naturally occurring in those raw materials. Champion states that the remaining allegations in Paragraph 31 of the FAC are not directed towards Champion and therefore no response thereto is required. To the extent a response is required, Champion lacks knowledge or information sufficient to form a belief concerning the remaining allegations in Paragraph 31 of the FAC and therefore denies them.

32.     Continued exposure to mercury can injure the inner surfaces of the digestive tract and abdominal cavity, causing lesions and inflammation. Mercury has also caused lesions in the central nervous system (spinal cord and brain), kidneys, and renal glands.

**Answer:** Champion states that the allegations in Paragraph 32 of the FAC are not directed towards Champion and therefore no response thereto is required. To the extent a response is required, Champion lacks knowledge or information sufficient to form a belief concerning the allegations in Paragraph 32 of the FAC and therefore denies them.

33. Based on the toxicity and risks of mercury, regulations have been enacted at both the Federal and state level.

**Answer:** Champion states that the allegations in Paragraph 33 of the FAC are not directed towards Champion and therefore no response thereto is required. To the extent a response is required, Champion lacks knowledge or information sufficient to form a belief concerning the allegations in Paragraph 33 of the FAC and therefore denies them.

34. Finally, the Contaminated Cat Foods contain cadmium which has been observed to cause anemia, liver disease, and nerve and brain damage in animals eating or drinking it. The U.S. Department of Health and Human Services has determined that cadmium and cadmium compounds are known human carcinogens, and the EPA has likewise determined that cadmium is a probable human carcinogen. It has been specifically noted that "Kidney and bone effects have … been observed in laboratory animals ingesting cadmium."

**Answer:** Champion admits that the raw materials used in making Champion's cat food may contain small quantities of cadmium that are naturally occurring in those raw materials. Champion states that the remaining allegations in Paragraph 34 of the FAC are not directed towards Champion and therefore no response thereto is required. To the extent a response is required, Champion lacks knowledge or information sufficient to form a belief concerning the remaining allegations in Paragraph 34 of the FAC and therefore denies them.

35.     Indeed, the FDA has acknowledged that "exposure to [these four heavy] metals are likely to have the most significant impact on public health" and has prioritized them in connection with its heavy metals workgroup looking to reduce the risks associated with human consumption of heavy metals.

**Answer:**     Champion states that the quotation cited to in Paragraph 35 of the FAC speaks for itself, is the best evidence of its terms and content, and no response to the allegations in Paragraph 35 of the FAC is required. To the extent a response is required, Champion denies the allegations in Paragraph 35 of the FAC.

36.     Despite the known risks of exposure to these heavy metals, Defendants have negligently, recklessly, and/or knowingly sold the Contaminated Cat Foods without disclosing they contain and/or have a high risk of inclusion of arsenic, mercury, cadmium, and lead to consumers like Plaintiff.  Indeed, Defendants have publicly acknowledged that consumers "have deep feelings and a sense of responsibility for the well-being of their dogs and cats."

**Answer:**     Champion denies the allegations in Paragraph 36 of the FAC.

37.     Moreover, Defendants' own actions show their knowledge that a reasonable consumer would care about the inclusion of heavy metals as they have specifically addressed this concern on their website by touting they require their suppliers to "provide heavy metals and mercury test results, for which we also test our final food products."

**Answer:**     Champion denies the allegations in Paragraph 37 of the FAC.

38.     Additionally, Defendants knew or should have been aware that a consumer would be feeding the Contaminated Cat Foods multiple times each day to his or her cat, making it the main, if not only, source of food for the cat.  This leads to repeated exposure of the heavy metals to the cat.

**Answer:**      Champion denies the allegations in Paragraph 38 of the FAC.

**B.      BPA**

39.      The dangers of BPA in human food are recognized by the FDA, along with various states.  For instance, manufacturers and wholesalers are prohibited from selling any children's products that contain BPA and any infant formula, baby food, or toddler food stored in containers with intentionally added BPA.

**Answer:**      Champion lacks knowledge or information sufficient to form a belief concerning the allegations in Paragraph 39 of the FAC and therefore denies them.

40.      Despite these known dangers, Defendants do not consistently test their ingredients or finished products for BPA.

**Answer:**      Champion denies the allegations in Paragraph 40 of the FAC.

41.      Certain Contaminated Cat Foods are sold by Defendants that contain levels of BPA—an industrial chemical that "is an endocrine disruptor.  It's an industrial chemical that according to Medical News Today '… interferes with the production, secretion, transport, action, function and elimination of natural hormones.'" BPA has been linked to various health issues, including reproductive disorders, heart disease, diabetes, cancer, and neurological problems.

**Answer:**      Champion admits that BPA is environmentally prevalent but otherwise denies the allegations in Paragraph 41 of the FAC. Champion denies any implication that its products are toxic or result in poisoning.

42.      Despite the presence of these unnatural and potentially harmful chemicals, Defendants prominently claim, feature, represent, advertise, or otherwise market the Contaminated Cat Foods as made from "Biologically Appropriate™" and "Fresh Regional Ingredients" consisting entirely of fresh meat, poultry, fish, and vegetables.  Indeed, each bag prominently displays the percentage of these ingredients on the front.

**Answer:** Champion admits that the expressions "Biologically Appropriate" and "Fresh Regional Ingredients" appear on certain of Champion's packaging. Champion denies the remaining allegations in Paragraph 42 of the FAC.

## II. THE MISREPRESENTATIONS AND FALSE & MISLEADING ADVERTISING

43. Defendants made numerous misleading statements and misrepresentations on their labeling, packaging, and advertising about the superior quality, fresh and regional ingredients, and the nutritional, natural, and healthy attributes of the Contaminated Cat Foods. These statements standing alone are misleading to a reasonable consumer and also when reviewed in the entirety of the labeling and packaging. Below are each of the individual statements Plaintiff challenges.

**Answer:** Champion denies the allegations in Paragraph 43 of the FAC.

44. "Biologically Appropriate™." This often-repeated nutritional statement by Defendants, which is also their stated "mission," is misleading and also requires additional disclosures as to the true ingredients and quality of the Contaminated Pet Foods. A reasonable consumer, like Plaintiff, would not understand the Contaminated Cat Foods contained (or had a risk or probability of containing) heavy metals, toxins, BPA, non-regional and non-fresh ingredients, and/or unnatural or other ingredients that do not conform to the labels, packaging, advertising, and statements.

**Answer:** Champion denies the allegations in Paragraph 44 of the FAC.

45. "**Fresh Regional Ingredients**" and "**Delivered daily**." These factual representations as to the sourcing, superior quality, and healthiness of the Contaminated Cat Foods by Defendants is misleading and also requires additional disclosures as to the true ingredients, sourcing, testing, and quality of the Contaminated Pet Foods. A reasonable consumer, like Plaintiff, would not understand that the Contaminated Cat Foods were made from imported, frozen, stored, adulterated, and/or heavy metal, BPA, or toxins filled ingredients.

      **Answer:**      Champion denies the allegations in Paragraph 45 of the FAC.

      46.     **"Never Outsourced**."  This factual representation as to superior quality and ingredients by Defendants is misleading and also requires additional disclosures as to the true ingredients, sourcing, testing, and quality of the Contaminated Pet Foods. Reasonable consumers, like Plaintiff, would not understand that the Contaminated Cat Foods included ingredients like meals and tallow that were not manufactured in Defendants' DogStar® Kitchens.

      **Answer:**      Champion denies the allegations in Paragraph 46 of the FAC.

      47.     **"Nourish as Nature Intended**."  This factual representation as to the superior quality, natural characteristics and healthiness by Defendants is misleading and also requires additional disclosures as to the true ingredients, sourcing, testing, and quality of the Contaminated Pet Foods. Reasonable consumers, like Plaintiff, would not understand that the Contaminated Cat Foods included BPA, and other unnatural ingredients that do not conform to the labels, packaging, advertising, and statements.

      **Answer:**      Champion denies the allegations in Paragraph 47 of the FAC.

      48.     **"Delivering Nutrients Naturally**" and "Made with Fresh and Natural Ingredients." These factual representations as to the superior quality, natural characteristics, and healthiness by Defendants is misleading and also requires additional disclosures as to the true ingredients, sourcing, testing, and quality of the Contaminated Pet Foods. Reasonable consumers, like Plaintiff, would not understand that the Contaminated Cat Foods included and/or had a risk of inclusion of BPA, and other unnatural ingredients that do not conform to the labels, packaging, advertising, and statements.

      **Answer:**      Champion denies the allegations in Paragraph 48 of the FAC.

### III.    DEFENDANTS FALSELY ADVERTISE THE CONTAMINATED CAT FOODS

49.    Defendants formulate, develop, manufacture, label, package, distribute, market, advertise, and sell their extensive Acana and Orijen lines of dry and freeze-dried pet food products across the United States, including the Contaminated Cat Foods.

**Answer:**    Champion admits only that that it sells ORIJEN and ACANA cat food products to distributors throughout the United States. Champion denies the remaining allegations in Paragraph 49 of the FAC.

50.    Defendants tout themselves as "a leader and innovator in making pet foods, Champion works to our own standards.  These are our standards, not USDA, not FDA, not [the Canadian Food Inspection Agency].  These agencies set minimum standards which we exceed exponentially.  Why?  Because our Mission and our Values dictate that we do, and that's what pet lovers expect from us."

**Answer:**    Champion lacks knowledge or information sufficient to form a belief concerning the allegations in Paragraph 50 of the FAC as Plaintiff does not identify where this statement comes from and therefore Champion denies the allegations.

51.    In 2016, Defendants opened DogStar® Kitchens, a 371,100 square foot production facility on 85 acres of land outside Bowling Green, Kentucky.  This facility has the capacity to produce up to 220 million pounds of Acana and Orijen pet food per year.  Defendants' Chief Executive Officer ("CEO"), Frank Burdzy, said, "The US is our fastest growing market." Prior to this facility's construction, Defendants' Acana and Orijen products were exclusively manufactured in Canada.  Since that facility began production, all Acana and Orijen foods sold in the United States are manufactured at the DogStar® Kitchens facility.

**Answer:**      Champion denies the allegation that all ACANA and ORIJEN foods sold in the United States are manufactured at the DogStar® Kitchens facility since its opening. Champion admits the remaining allegations in Paragraph 51 of the FAC.

52.      Defendants have represented a commitment to using fresh and local ingredients, including wild-caught fish.

**Answer:**      Champion admits that on its packaging it identifies some of the fresh and regional ingredients included in a particular package of cat food. Champion denies the remaining allegations in Paragraph 52 of the FAC.

53.      Defendants have represented that its DogStar® Kitchens meet the European Union's standard for pet food: "USA Dogstar® kitchens, ingredients, processes, and foods all meet the strictest European Union standards—which are stricter than those set by [the Association of American Feed Control Officials], the [Canadian Food Inspection Agency] or FDA. Likewise, Defendants proclaim that Orijen is "[u]nmatched by any other pet food maker anywhere, our kitchens meet the strictest standards in the world, including the Government of Canada, and the European Union." Indeed, Defendants' own CEO has stated that "[e]ven if we're selling in Canada or the U.S. or Asia, we manufacture to the [European Union] standard."

**Answer:**      Champion admits that on its websites it stated that its DogStar® Kitchens meet certain European Union standards in connection with pet food processing. Champion lacks knowledge or information sufficient to form a belief concerning the remaining allegations in Paragraph 53 of the FAC as Plaintiff does not identify where this statement comes from and therefore Champion denies the remaining allegations in Paragraph 53 of the FAC.

54. However, contrary to Defendants' assertion, they do not meet the European Union standards for pet foods.

**Answer:** Champion denies the allegations in Paragraph 54 of the FAC.

55. The European Parliament and the Council of the European Union state that "[p]roducts intended for animal feed must be sound, genuine and of merchantable quality and therefore when correctly used must not represent any danger to human health, animal health or to the environment or adversely affect livestock production." The European Parliament and the Council of the European Union provide maximum levels for undesirable substances in animal feed, such as lead, arsenic, mercury, and cadmium, and make clear that products that contain undesirable substances that exceed the specified maximum levels will be prohibited. In relevant part, subject to certain exceptions, arsenic must not exceed 2 parts per million (or 2000 ppb). Yet, the testing results contained herein show that certain of Defendants' products have exceeded the European Union's maximum level for arsenic in animal feed.

**Answer:** Champion states that the regulation cited to in Paragraph 55 of the FAC speaks for itself, is the best evidence of its terms and content, and no response to the allegations in Paragraph 55 of the FAC is required. To the extent a response is required, Champion denies that it is in violation of the regulation cited in Paragraph 55 of the FAC.

56. Defendants claim, state, represent, advertise, label, and market their Contaminated Cat Foods as:

(a) "Biologically Appropriate™";

(b) Using "Fresh Regional Ingredients" and "Delivered daily";

(c) "Never Outsourced";

(d) "Nourish[ing] as Nature Intended";

(e)  "Delivering Nutrients Naturally";

(f)  "Made with Fresh and Natural Ingredients"; and

(g)  "Premium Meat and Fish Ingredients."

**Answer:**  Champion admits that only the statements "Biologically Appropriate," "Fresh Regional Ingredients," "Delivered daily," "Never Outsourced," and "Nourish[ing] as Nature Intended" appeared on some of Champion's cat food packaging from time to time. Champion denies the remaining allegations in Paragraph 56 of the FAC.

57.  Defendants therefore had a duty to ensure that these statements were true.  As such, Defendants knew or should have known that the Contaminated Cat Foods included the presence of heavy metals, toxins, BPA, non-regional and non-fresh ingredients, and/or unnatural or other ingredients that do not conform to the labels, packaging, advertising, and statements.

**Answer:**  Champion denies the allegations in Paragraph 57 of the FAC.

58.  Likewise, by declaring, claiming, stating, featuring, representing, advertising, or otherwise marketing that Orijen and Acana foods, including the Contaminated Cat Foods, are:

(a)  "Biologically Appropriate™";

(b)  "Fresh Regional Ingredients" and "Delivered daily";

(c)  "Never Outsourced";

(d)  "Nourish[ing] as Nature Intended";

(e)  "Delivering Nutrients Naturally";

(f)  "Made with Fresh and Natural Ingredients"; and

(g)  "Premium Meat and Fish Ingredients."

24

Defendants had a duty to ensure that there were no chemicals included in the Contaminated Cat Foods. In fact, Defendants offered further assurances by representing the quality control over the manufacturing of the Contaminated Cat Foods as a rigid process free of outsourcing.

**Answer:** Champion admits that only the statements "Biologically Appropriate," "Fresh Regional Ingredients," "Delivered daily," "Never Outsourced," and "Nourish[ing] as Nature Intended" appeared on some of Champion's cat food packaging from time to time. Champion denies the remaining allegations in Paragraph 58 of the FAC.

59. Defendants specifically promise on their website, "[W]e prepare ACANA ourselves, in our own kitchens, where we oversee every detail of food preparation—from where our ingredients come from, to every cooking, quality and food safety process." Similarly, Defendants promise that their "Dogstar® Kitchens have access to a myriad of specialty family farms, with whom we partner for our supply of trusted ingredients." Finally, Defendants promise "[s]tandards that rival the human food processing industry for authenticity, nutritional integrity, and food safety." According to the Orijen and Acana websites, Defendants "feature state-of-the-art fresh food processing technologies." As such, Defendants knew or should have known that higher temperatures coupled with the type of containers used in manufacturing create a real risk of BPA in their products.

**Answer:** Champion admits that the statement ""[W]e prepare ACANA ourselves, in our own kitchens, where we oversee every detail of food preparation—from where our ingredients come from, to every cooking, quality and food safety process" appeared on ACANA's website from time to time. Champion admits that the statement "Dogstar® Kitchens have access to a myriad of specialty family farms, with whom we partner for our supply of trusted ingredients" appeared on ORIJEN's website from time to time. Champion

admits that the statement "feature state-of-the- art fresh food processing technologies" has appeared on ACANA's website from time to time. Champion denies the remaining allegations in Paragraph 59 of the FAC.

60. In promoting their promises, claims, representations, advertisements, or otherwise marketing that the Contaminated Cat Foods are superior quality, healthy, never outsourced and made with fresh, regional ingredients, Defendants provide further assurances to their customers:

> Equipped with state-of-the-art fresh food processing technologies, our DogStar® kitchens feature 25,000 square feet of cooler space, capable of holding over 500,000 pounds of fresh *local meats, fish and poultry, plus fresh* whole local fruits and vegetables.

> Unmatched by any pet food maker, our ingredients are deemed fit for human consumption when they arrive at our kitchens fresh, bursting with goodness, and typically within 48 hours from when they were harvested.

**Answer:** Champion admits that the indented quotation appeared at some point in time on ACANA's website. Champion denies the remaining allegations in Paragraph 60 of the FAC.

61. To this end, Defendants' websites further claim, feature, represent, advertise, or otherwise market that the Contaminated Cat Foods are manufactured in such a way that would prevent BPA forming by closely monitoring temperatures and quality:

- "[O]ur unique Votator Heat Exchangers bring chilled fresh ingredients to room temperature without introducing water or steam, which enables us to add even more fresh meats into our foods."

- "Referred to as 'the most significant preconditioning development for extrusion cooking in the last 20 years,' our High Intensity Preconditioners were custom-built for DogStar®, feeding fresh meats from the Votators to Extruders at rates previously unheard of, and without high temperatures."

- "At the heart of our kitchens is a twin thermal extruder which is fed fresh ingredients from our High Intensity Preconditioner.

The first of its kind in North America, it took 11 months to build, and features custom steam injection to enable very high fresh meat inclusions and a gentle cooking process which helps further reduce the carbohydrates in our foods and preserves their natural goodness."

**Answer:**     Champion admits that the bulleted points in Paragraph 61 of the FAC appeared at some point in time on ORIJEN's website. Champion admits that similar statements to the bulleted points in Paragraph 61 of the FAC appeared on at some point in time on ACANA's website. Champion denies the remaining allegations in Paragraph 61 of the FAC.

62.     Thus, Defendants engaged in deceptive advertising and labeling practice by expressly claiming, stating, featuring, representing, advertising, or otherwise marketing on Acana and Orijen labels and related websites that the Contaminated Cat Foods are natural, in compliance with relevant European Union regulations and standards, and made from "Biologically Appropriate™" and "Fresh Regional Ingredients" when they contain the non-naturally occurring chemical BPA.

**Answer:**     Champion denies the allegations in Paragraph 62 of the FAC.

63.     Based on these false representations, Defendants charge a premium, knowing that the claimed superior quality, healthy, nutritious, and natural make-up of the Contaminated Cat Foods (as well as all of the other alleged false and/or misleading representations concerning fresh and regional ingredients) are factors an average consumer would consider in picking a more expensive cat food.  By negligently and/or deceptively representing, marketing, and advertising the Contaminated Cat Foods as natural, in compliance with relevant European Union regulations and standards, and made from "Biologically Appropriate™" and "Fresh Regional Ingredients"

consisting entirely of fresh meat, poultry, fish, and vegetables, Defendants wrongfully capitalized

on, and reaped enormous profits from, consumers' strong preference for natural pet food products.

      **Answer:**      Champion denies the allegations in Paragraph 63 of the FAC.

64.    Additionally, Defendants knew or should have known that their ingredients, and

thus final products, could contain materials such as heavy metals, toxins, BPA, non-regional and

non-fresh, and/or unnatural or other ingredients that do not conform to the labels, packaging,

advertising, and statements yet they did not test all ingredients and finished products, including

the Contaminated Cat Foods, for such materials.

      **Answer:**      Champion denies the allegations in Paragraph 64 of the FAC.

65.    The Contaminated Cat Foods are available at numerous retail and online outlets in

the United States, including Illinois.

      **Answer:**      Champion denies the allegations in Paragraph 65 of the FAC.

66.    The Contaminated Cat Foods are widely advertised, and Defendants employ a Chief

Marketing Officer, a Vice President for Customer Engagement, and a Director of Marketing in

both the United States and Canada.

      **Answer:**      Champion denies the allegations in Paragraph 66 of the FAC.

67.    The official websites for Acana and Orijen display the Contaminated Cat Foods,

descriptions and full lists of ingredients for the Contaminated Cat Foods and includes the following

promises:

      **Answer:**      Champion admits that the websites for ACANA and ORIJEN generally

      display the diets for each brand, the list of ingredients for each diet, and the images below

      Paragraph 67 of the FAC. Champion denies the remaining allegations in Paragraph 67 of

      the FAC.

68.     Defendants' websites repeat the false and misleading claims, representations, advertisements, and other marketing about the Contaminated Cat Foods' benefits, quality, purity, and natural make-up, without any mention of the heavy metals, toxins, BPA, non-regional and non-fresh ingredients, and/or unnatural or other ingredients that do not conform to the labels, packaging, advertising, and statements they contain.  This is not surprising given that natural pet food sales represent over $5.5 billion in the United States and have consistently risen over the years.

**Answer:**     Champion lacks knowledge sufficient to form a belief concerning the accuracy of the image below Paragraph 68 of the FAC and therefore denies any allegation related thereto. Champion denies the remaining allegations in Paragraph 68 of the FAC.

69.     Moreover, Defendants have themselves acknowledged the importance of quality cat food to the reasonable consumer:

> According to Frank Burdzy, President and Chief Executive Officer of Champion Petfoods, "Our No. 1 mandate is BAFRINO—biologically appropriate, fresh regional ingredients, never outsourced."   Burdzy continued, "We build relationships with our suppliers and farms and fisheries.  We are trusted by pet owners."

**Answer:**     Champion admits that its CEO made the statements attributed to him in Paragraph 69 of the FAC. Champion denies the remaining allegations in Paragraph 69 of the FAC.

70.     As a result of Defendants' omissions, a reasonable consumer would have no reason to suspect the presence of heavy metals, BPA, non-regional and non-fresh ingredients, and/or unnatural other ingredients that do not conform to the labels, packaging, advertising, and statements in the Contaminated Cat Foods without conducting his or her own scientific tests, or reviewing third-party scientific testing of these products.

**Answer:**     Champion denies the allegations in Paragraph 70 of the FAC.

71.    However, after conducting third-party scientific testing, it is clear that the Contaminated Cat Foods do in fact contain levels of both heavy metals and/or BPA.

**Answer:**    Champion denies the allegations in Paragraph 71 of the FAC.

72.    Defendants have wrongfully and misleadingly advertised and sold the Contaminated Cat Foods without any label or warning indicating to consumers that these products contain (or had a high risk or probability of containing) heavy metals, toxins, BPA, non-regional and non-fresh ingredients, and/or unnatural or other ingredients that do not conform to the labels, packaging, advertising, and statements, , or that these toxins can over time accumulate in the cat's body to the point where poisoning, injury, and/or disease can occur.

**Answer:**    Champion denies the allegations in Paragraph 72 of the FAC.

73.    Defendants' omissions are material, false, misleading, and reasonably likely to deceive the public.  This is true especially in light of the long-standing campaign by Defendants to market the Contaminated Cat Foods as healthy, nutritious, superior quality, natural, and/or unadulterated, and made with fresh and regional ingredients that were never outsourced to induce consumers, such as Plaintiff, to purchase the products.  For instance, Defendants market the Contaminated Cat Foods as "Biologically Appropriate™," using "Fresh Regional Ingredients" "Nourishing as Nature Intended," and "Never Outsourced," all on the products' packaging and on Defendants' websites.

**Answer:**    Champion denies the allegations in Paragraph 73 of the FAC.

74.    Moreover, Defendants devote significant web and packaging space to the marketing of their DogStar® Kitchens, which they tell consumers "are the most advanced pet food kitchens on earth, with standards that rival the human food processing industry."

**Answer:**    Champion denies the allegations in Paragraph 74 of the FAC.

75.     Defendants state on their website that the Orijen pet foods "feature[] unmatched and unique inclusions of meat, naturally providing everything your dog or cat needs to thrive." Defendants further promise on the products' packaging and on its website that its Orijen and Acana foods are "guaranteed to keep your cat or kitten happy, healthy, and strong."   Using such descriptions and promises makes Defendants' advertising campaign deceptive based on the presence and/or risk of inclusion of heavy metals, toxins, BPA, non-regional and non-fresh ingredients, and/or unnatural or other ingredients that do not conform to the labels, packaging, advertising, and statements in the Contaminated Cat Foods.  Reasonable consumers, like Plaintiff, would consider the risk and/or mere presence of heavy metals in the Contaminated Cat Foods a material fact in considering what pet food to purchase, including whether to pay a premium price.

**Answer:**     Champion admits that the statement in the first sentence appeared on ORIJEN's website from time to time. Champion admits the expression "guaranteed" to "keep your cat or kitten happy, healthy, and strong" appeared from time to time on some of ACANA's and ORIJEN's packaging. Champion denies the remaining allegations in Paragraph 75 of the FAC.

76.     Defendants' above-referenced statements, representations, partial disclosures, and omissions are false, misleading, and crafted to deceive the public as they create an image that the Contaminated Cat Foods are healthy, nutritious, superior quality, natural, and/or unadulterated, and made with fresh and regional ingredients that were never outsourced and are free of contaminants.  Moreover, Defendants knew or should have reasonably expected that the presence of heavy metals, toxins, BPA, non-regional and non-fresh ingredients, and/or unnatural or other ingredients that do not conform to the labels, packaging, and advertising in their Contaminated Cat

Foods is something an average consumer would consider in purchasing cat food. Defendants' representations and omissions are false, misleading, and reasonably likely to deceive the public.

**Answer:** Champion denies the allegations in Paragraph 76 of the FAC.

77. Moreover, reasonable consumers, such as Plaintiff and other members of the Class (as defined herein), would have no reason not to believe and/or anticipate that the Contaminated Cat Foods are "Biologically Appropriate™," made using "Fresh Regional Ingredients," "Nourishing as Nature Intended," and "Never Outsourced." Non-disclosure and/or concealment of the risk and/or actual inclusion of heavy metals, toxins, BPA, non-regional and non-fresh ingredients, and/or unnatural or other ingredients that do not conform to the labels, packaging, advertising, and statements in the Contaminated Cat Foods coupled with the misrepresentations that the food is healthy, nutritious, superior quality, natural, and/or unadulterated, and made with fresh and regional ingredients that were never outsourced is intended to and does, in fact, cause consumers to purchase a product Plaintiff and members of the Class would not have bought if the true quality and ingredients were disclosed. As a result of these false or misleading statements and omissions, Defendants have generated substantial sales of the Contaminated Cat Foods.

**Answer:** Champion denies the allegations in Paragraph 77 of the FAC.

78. The expectations of reasonable consumers and deception of these consumers by Defendants' advertising, misrepresentations, packaging, and labeling is further highlighted by the public reaction to the allegations in this lawsuit, as reported by various websites.

**Answer:** Champion denies the allegations in Paragraph 78 of the FAC.

## IV.    DEFENDANTS' STATEMENTS AND OMISSIONS VIOLATE ILLINOIS LAWS

79. Illinois laws are designed to ensure that a company's claims about its products are truthful and accurate. Defendants violated these state laws by negligently, recklessly, and/or intentionally incorrectly claiming that the Contaminated Cat Foods are healthy, nutritious, superior

quality, natural, and/or unadulterated, and made with fresh and regional ingredients that were never outsourced and by not accurately detailing that the products contain (or had a high risk or probability of containing) heavy metals, toxins, imported ingredients, BPA and/or unnatural or other ingredients that do not conform to the labels, packaging, advertising, and statements. Defendants misrepresented that the Contaminated Cat Foods are natural, in compliance with relevant European Union regulations and standards, and made from "Biologically Appropriate™" and "Fresh Regional Ingredients" consisting entirely of fresh meat, poultry, fish, and vegetables; "Nourish[ing] as Nature Intended;" and "Never Outsourced."

**Answer:** Champion denies the allegations in Paragraph 79 of the FAC.

80. Defendants' marketing and advertising campaign has been sufficiently lengthy in duration, and widespread in dissemination, that it would be unrealistic to require Plaintiff to plead reliance upon each advertised misrepresentation.

**Answer:** Champion denies the allegations in Paragraph 80 of the FAC.

81. Defendants have engaged in this long-term advertising campaign to convince potential customers that the Contaminated Cat Foods are healthy, nutritious, superior quality, natural, and/or unadulterated, and made with fresh and regional ingredients that are never outsourced, and do not contain non-regional and non-fresh ingredients or premade meals from a supplier that accepts ingredients that had levels of (or risks of inclusion of) BPA and heavy metals. Likewise, Defendants have engaged in this long-term advertising campaign to convince potential customers that the Contaminated Cat Foods are natural, made with fresh regional ingredients, healthy, and superior quality despite the presence of BPA in the food.

**Answer:** Champion denies the allegations in Paragraph 81 of the FAC.

V.    **PLAINTIFF'S        RELIANCE WAS REASONABLE AND FORESEEN BY DEFENDANTS**

82.    Plaintiff reasonably relied on Defendants' own claims, representations, advertisements, and other marketing concerning the particular qualities and benefits of the Contaminated Cat Foods.

**Answer:**    Champion denies the allegations in Paragraph 82 of the FAC.

83.    Plaintiff also relied upon Defendants' false and/or misleading representations alleged herein, including the websites and/or the Contaminated Cat Foods' labels and packaging in making his purchasing decisions.

**Answer:**    Champion denies the allegations in Paragraph 83 of the FAC.

84.    Any reasonable consumer would consider the labeling of a product (as well as the other false and/or misleading representations alleged herein) when deciding whether to purchase the Contaminated Cat Foods.  Here, Plaintiff relied on the certainty of the various specific statements and misrepresentations by Defendants that the Contaminated Cat Foods were natural, in compliance with relevant European Union regulations and standards, and made from "Biologically Appropriate™" and "Fresh Regional Ingredients" consisting entirely of fresh meat, poultry, fish, and vegetables; "feature[ing] unmatched and unique inclusions of meat, naturally providing everything your dog or cat needs to thrive"; and were "guaranteed to keep your cat or kitten healthy, happy, and strong" without disclosing the inclusion of heavy metals, toxins, BPA, non-regional and non-fresh ingredients, and/or unnatural or other ingredients that do not conform to the labels, packaging, advertising, and statements.

**Answer:**    Champion denies the allegations in Paragraph 84 of the FAC.

## VI.    DEFENDANTS' KNOWLEDGE

85.    Defendants have, and had, exclusive knowledge of the physical and chemical makeup of the Contaminated Cat Foods.    Defendants also had exclusive knowledge of their suppliers, including where the ingredients are sourced, how the ingredients arrive at the DogStar® Kitchens, and the quality of received ingredients.  Defendants have publicly stated on their website that they require their suppliers to "provide heavy metals and mercury test results, for which we also test our final food products."  As such, they have had test results that show the inclusion of heavy metals in the Contaminated Cat Foods.

**Answer:**    Champion denies the allegations in Paragraph 85 of the FAC.

86.    Additionally, Defendants received notice of the contaminants in their dog and cat food, including the Contaminated Cat Foods, through the Clean Label Project, which found higher levels of heavy metals in their dog and cat food products compared to competitors' products.  In fact, Defendants actually responded to the Clean Label Project's findings.  Defendants spoke with the Clean Label Project by phone regarding its findings and methodology, which showed that Orijen pet foods have high levels of heavy metals compared to other pet foods.  The Clean Label Project informed Defendants that it compared Orijen pet foods to competitors' products and gave them a one-star rating, meaning their products contained higher levels of contaminants than other products on the market.  Defendants' direct contact with the Clean Label Project demonstrates their knowledge about the Contaminated Cat Foods.

**Answer:**    Champion admits that it spoke with Clean Label Project regarding its findings of small levels of heavy metals in Champion's cat food. Champion denies the remaining allegations in Paragraph 86 of the FAC.

87.    Defendants also issued a white paper in defense of the Clean Label Project findings that acknowledges their products contain heavy metals. In that same White Paper, Defendants

stated "[w]e systematically test ORIJEN and ACANA products for heavy metals (arsenic, cadmium, lead and mercury) at two third-party laboratories."

> **Answer:** Champion admits that Champion published a White Paper which discloses the average levels of heavy metals in Champion's pet food and in which Champion states "[w]e systematically test ORIJEN and ACANA products for heavy metals (arsenic, cadmium, lead and mercury) at two third-party laboratories." Champion denies the remaining allegations in Paragraph 87 of the FAC.

88.     The White Paper discussed the sources of arsenic, cadmium, lead, and mercury, and what Defendants contend to be acceptable levels of those heavy metals in pet food.

> **Answer:** Champion admits the allegations in Paragraph 88 of the FAC and further states that the acceptable levels were determined by the Food and Drug Administration and the National Research Council.

89.     Defendants did not widely disseminate this White Paper or direct consumers to this White Paper.  Moreover, Defendants did not change their packaging or labeling to include a disclaimer that the Contaminated Cat Foods contain any levels of the heavy metals or include a copy of the White Paper findings on the packaging or labeling.  Finally, there is no disclosure as to whether the Contaminated Cat Foods tested were manufactured in the United States or Canada.

> **Answer:** Champion denies the allegations in Paragraph 89 of the FAC.

90.     Defendants likewise had knowledge of the potential risk and inclusion of BPA in their Contaminated Cat Foods.  Defendants have publicly stated they ask their suppliers if the packaging contains BPA while at the same time admitting that they in fact do not perform any tests to confirm that the Contaminated Cat Foods are BPA-free.  Moreover, Defendants no longer boast about "exceeding" regulations when asked if the Contaminated Cat Foods are BPA-free.

**Answer:**    Champion denies the allegations in Paragraph 90 of the FAC.

91.    Defendants also misrepresented the sourcing of their ingredients with respect to both the country or place of origin and the presence of, or risk of presence of, BPA.

**Answer:**    Champion denies the allegations in Paragraph 91 of the FAC.

## VII.    PRIVITY EXISTS WITH PLAINTIFF AND THE PROPOSED CLASS

92.    Defendants knew that consumers such as Plaintiff and the proposed Class would be the end purchasers of the Contaminated Cat Foods and the target of their advertising and statements.

**Answer:**    Champion denies the allegations in Paragraph 92 of the FAC.

93.    Defendants intended that the advertising, labeling, statements, and representations would be considered by the end purchasers of the Contaminated Cat Foods, including Plaintiff and the proposed Class.

**Answer:**    Champion denies the allegations in Paragraph 93 of the FAC.

94.    Defendants directly marketed to Plaintiff and the proposed Class through statements on their website, labeling, advertising, and packaging.

**Answer:**    Champion denies the allegations in Paragraph 94 of the FAC.

## CLASS ACTION ALLEGATIONS

95.    Plaintiff brings this action individually and on behalf of the following Class pursuant to Rules 23(a) and 23(b)(2) and (3) of the Federal Rules of Civil Procedure:

> All persons who reside in the State of Illinois who, from July 1, 2013, to the present, purchased the Contaminated Cat Foods in the State of Illinois for household or business use, and not for resale (the "Class");

**Answer:**    Champion admits that Plaintiff purports to bring this class action pursuant to Fed. R. Civ. P. 23(a) and (b)(3) on behalf of the putative class defined in Paragraph 95 of the FAC, but denies that any such class could be certified.

96.     Excluded from the Class are the Defendants, any parent companies, subsidiaries, and/or affiliates, officers, directors, legal representatives, employees, co-conspirators, all governmental entities, and any judge, justice, or judicial officer presiding over this matter.

**Answer:**     Champion admits that Plaintiff purports to exclude from the putative class, Champion Petfoods USA Inc. and Champion Petfoods LP, and any parent companies, subsidiaries, and/or affiliates, officers, directors, legal representatives, employees, co-conspirators, all governmental entities, and any judge, justice, or judicial officer presiding over this matter, but denies that the putative class could ever be certified.

97.     This action is brought and may be properly maintained as a class action.  There is a well-defined community of interests in this litigation and the members of the Class are easily ascertainable.

**Answer:**     Champion denies the allegations in Paragraph 97 of the FAC.

98.     The members in the proposed Class are so numerous that individual joinder of all members is impracticable, and the disposition of the claims of the Class members in a single action will provide substantial benefits to the parties and Court.

**Answer:**     Champion denies the allegations in Paragraph 98 of the FAC.

99.     Questions of law and fact common to Plaintiff and the Class include, but are not limited to, the following:

(a)     whether Defendants owed a duty of care to Plaintiff and the Class;

(b)     whether Defendants knew or should have known that the Contaminated Cat Foods contained heavy metals, toxins, BPA, non-regional and non- fresh ingredients, and/or unnatural or other ingredients that do not conform to the labels, packaging, advertising and statements;

(c)     whether Defendants failed to test for the presence of heavy metals, toxins, BPA, non-regional and non-fresh ingredients, and/or unnatural or other ingredients that do not conform to the labels, packaging, advertising, and statements;

(d)     whether Defendants wrongfully represented and continue to represent that the Contaminated Cat Foods are natural, in compliance with relevant European Union regulations and standards, and made from "Biologically Appropriate™" and "Fresh Regional Ingredients" consisting entirely of fresh meat, poultry, fish, and vegetables;

(e)     whether Defendants wrongfully represented and continue to represent that the Contaminated Cat Foods are healthy, nutritious, superior quality, natural, and made with fresh and regional ingredients that were never outsourced;

(f)     whether Defendants wrongfully represented and continue to represent that the Contaminated Cat Foods are natural;

(g)     whether Defendants wrongfully failed to state that the Contaminated Cat Foods contained (or had a risk or probability of containing) heavy metals, toxins, BPA, non-regional and non-fresh ingredients, and/or unnatural or other ingredients that do not conform to the labels, packaging, advertising, and statements;

(h)     whether Defendants' representations in advertising, statements packaging, and/or labeling are false, deceptive, and misleading;

(i)     whether those representations are likely to deceive a reasonable consumer;

(j)     whether a reasonable consumer would consider the presence of heavy metals, toxins, BPA, non-regional and non-fresh ingredients, and/or unnatural or other ingredients that do not conform to the labels, packaging, advertising, and statements as a material fact in purchasing pet food;

(k)     whether Defendants had knowledge that those representations were false, deceptive, and misleading;

(l)     whether Defendants continue to disseminate those representations despite knowledge that the representations are false, deceptive, and misleading;

(m)     whether a representation that a product is healthy, nutritious, superior quality, natural, and/or unadulterated, and made with fresh and regional ingredients that were never outsourced is material to a reasonable consumer;

(n)     whether Defendants' representations and descriptions on the labeling of the Contaminated Cat Foods are likely to mislead, deceive, confuse, or confound consumers acting reasonably;

(o)     whether Defendants violated Illinois state laws;

(p)     whether Defendants engaged in unfair trade practices;

(q)  whether Defendants' conduct was negligent;

(r)  whether Defendants' conduct was fraudulent;

(s)  whether Plaintiff and the members of the Class are entitled to actual, statutory, and punitive damages; and

(t)  whether Plaintiff and members of the Class are entitled to declaratory and injunctive relief.

**Answer:**  Champion denies the allegations in Paragraph 99 of the FAC, including subparagraphs (a) through (t).

100.  Defendants engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff individually and on behalf of the other members of the Class. Identical statutory violations and business practices and harms are involved. Individual questions, if any, are not prevalent in comparison to the numerous common questions that dominate this action.

**Answer:**  Champion denies the allegations in Paragraph 100 of the FAC.

101.  Plaintiff's claims are typical of those of the members of the Class in that they are based on the same underlying facts, events, and circumstances relating to Defendants' conduct.

**Answer:**  Champion denies the allegations in Paragraph 101 of the FAC.

102.  Plaintiff will fairly and adequately represent and protect the interests of the Class, have no interests incompatible with the interests of the Class, and have retained counsel competent and experienced in class action, consumer protection, and false advertising litigation.

**Answer:**  Champion denies the allegations in Paragraph 102 of the FAC.

103.  Class treatment is superior to other options for resolution of the controversy because the relief sought for each member of the Class is small such that, absent representative litigation, it would be infeasible for members of the Class to redress the wrongs done to them.

**Answer:**  Champion denies the allegations in Paragraph 103 of the FAC.

104.    Questions of law and fact common to the Class predominate over any questions affecting only individual members of the Class.

**Answer:**    Champion denies the allegations in Paragraph 104 of the FAC.

105.    As a result of the foregoing, class treatment is appropriate.

**Answer:**    Champion denies the allegations in Paragraph 105 of the FAC.

## CLAIMS FOR RELIEF

## COUNT I

**Negligent Misrepresentation Against Defendants on Behalf of the Class**

106.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

**Answer:**    The allegations in Paragraph 106 in the FAC relate to a count that was voluntarily dismissed by the Plaintiff, and therefore no response thereto is required. To the extent a response is required, Champion incorporates by reference its responses to each and every allegation above.

107.    Defendants had a duty to Plaintiff and the Class to exercise reasonable and ordinary care in the formulation, testing, manufacture, advertising, marketing, distribution, and sale of the Contaminated Cat Foods.

**Answer:**    The allegations in Paragraph 107 in the FAC relate to a count that was voluntarily dismissed by the Plaintiff, and therefore no response thereto is required. To the extent a response is required, Champion denies the allegations in Paragraph 107 of the FAC.

108.    Defendants breached their duty to Plaintiff and the Class by formulating, testing, manufacturing, advertising, marketing, distributing, and selling products to Plaintiff that did not have the ingredients, qualities, and characteristics advertised by Defendants and by failing to

communicate accurate information about the Contaminated Cat Foods' ingredients, qualities, and characteristics to Plaintiff and the Class.

**Answer:** The allegations in Paragraph 108 in the FAC relate to a count that was voluntarily dismissed by the Plaintiff, and therefore no response thereto is required. To the extent a response is required, Champion denies the allegations in Paragraph 108 of the FAC.

109.    Defendants falsely represented to Plaintiff and the Class that their Contaminated Cat Foods are:

      (a)     "Biologically Appropriate™";

      (b)     "Fresh Regional Ingredients" and "Delivered daily";

      (c)     "Never Outsourced";

      (d)     "Nourish[ing] as Nature Intended";

      (e)     "Delivering Nutrients Naturally";

      (f)     "Made with Fresh and Natural Ingredients"; and

      (g)     "Premium Meat and Fish Ingredients."

**Answer:** The allegations in Paragraph 109 in the FAC relate to a count that was voluntarily dismissed by the Plaintiff, and therefore no response thereto is required. To the extent a response is required, Champion denies the allegations in Paragraph 109 of the FAC, including subparagraphs (a) through (g).

110.    Defendants intentionally and knowingly made these misrepresentations to induce Plaintiff and the Class to purchase the Contaminated Cat Foods.

**Answer:** The allegations in Paragraph 110 in the FAC relate to a count that was voluntarily dismissed by the Plaintiff, and therefore no response thereto is required. To the

extent a response is required, Champion denies the allegations in Paragraph 110 of the FAC.

111.    Plaintiff and the Class did in fact rely on those misrepresentations and purchased the Contaminated Cat Foods to their detriment. Given the negligent manner in which Defendants advertised, represented, and otherwise promoted the Contaminated Cat Foods, Plaintiff and the Class's reliance on Defendants' misrepresentations was justifiable.

**Answer:**    The allegations in Paragraph 111 in the FAC relate to a count that was voluntarily dismissed by the Plaintiff, and therefore no response thereto is required. To the extent a response is required, Champion denies the allegations in Paragraph 111 of the FAC.

112.    Defendants knew or should have known that: (1) certain of the Contaminated Cat Foods were not natural because they contained levels of BPA and included an ingredient that was made by a supplier who accepted deads and the potential for cross-contamination was high; and (2) the Contaminated Cat Foods were not healthy, nutritious, superior quality, natural, and/or unadulterated, and made with fresh and regional ingredients that were never outsourced.

**Answer:**    The allegations in Paragraph 112 in the FAC relate to a count that was voluntarily dismissed by the Plaintiff, and therefore no response thereto is required. To the extent a response is required, Champion denies the allegations in Paragraph 112 of the FAC.

113.    Consumers, like Plaintiff and members of the Class, would consider the presence of heavy metals, toxins, BPA, non-regional and non-fresh ingredients, and/or unnatural or other ingredients that do not conform to the labels, packaging, advertising, and statements to be material when determining which cat food to purchase.

**Answer:** The allegations in Paragraph 113 in the FAC relate to a count that was voluntarily dismissed by the Plaintiff, and therefore no response thereto is required. To the extent a response is required, Champion denies the allegations in Paragraph 113 of the FAC.

114. As a direct and proximate result of Defendants' conduct, Plaintiff and the Class suffered actual damages in that they purchased Contaminated Cat Foods that were worth less than the price they paid and that they would not have purchased at all had they known they contained heavy metals, toxins, BPA, non-regional and non-fresh ingredients, and/or unnatural or other ingredients that do not conform to the labels, packaging, advertising, and statements.

**Answer:** The allegations in Paragraph 114 in the FAC relate to a count that was voluntarily dismissed by the Plaintiff, and therefore no response thereto is required. To the extent a response is required, Champion denies the allegations in Paragraph 114 of the FAC.

115. Plaintiff and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available.

**Answer:** The allegations in Paragraph 115 in the FAC relate to a count that was voluntarily dismissed by the Plaintiff, and therefore no response thereto is required. To the extent a response is required, Champion denies the allegations in Paragraph 115 of the FAC.

## COUNT II

### Negligence Against Defendants on Behalf of the Class

116. Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

**Answer:** The allegations in Paragraph 116 in the FAC relate to a count that was voluntarily dismissed by the Plaintiff, and therefore no response thereto is required. To the extent a response is required, Champion incorporates by reference its responses to each and every allegation above.

117. The Contaminated Cat Foods manufactured, distributed, marketed, and sold by Defendants are "commercial feed" within the meaning of 505 Ill. Comp. Stat. 30/3.

**Answer:** The allegations in Paragraph 117 in the FAC relate to a count that was voluntarily dismissed by the Plaintiff, and therefore no response thereto is required. To the extent a response is required, Champion denies the allegations in Paragraph 117 of the FAC.

118. Defendants' conduct is negligent per se. Defendants violated their statutory duty under 505 Ill. Comp. Stat. 30/11.1, which provides that it is unlawful to "manufacture or distribute any commercial feed that is adulterated or misbranded."

**Answer:** The allegations in Paragraph 118 in the FAC relate to a count that was voluntarily dismissed by the Plaintiff, and therefore no response thereto is required. To the extent a response is required, Champion denies the allegations in Paragraph 118 of the FAC.

119. Commercial feed is misbranded if the "labeling is false or misleading in any particular." 505 Ill. Comp. Stat. 30/8.

**Answer:** The allegations in Paragraph 119 in the FAC relate to a count that was voluntarily dismissed by the Plaintiff, and therefore no response thereto is required. To the extent a response is required, Champion denies the allegations in Paragraph 119 of the FAC.

120.    The labels on commercial feed must disclose the names of each ingredient used in the manufacturing of the pet food.  505 Ill. Comp. Stat. 30/5.

**Answer:**    The allegations in Paragraph 120 in the FAC relate to a count that was voluntarily dismissed by the Plaintiff, and therefore no response thereto is required. To the extent a response is required, Champion denies the allegations in Paragraph 120 of the FAC.

121.    The Contaminated Cat Foods are "adulterated" within the meaning of 505 Ill. Comp. Stat. 30/7 because:

(a)    they contain poisonous and/or deleterious substances such as heavy metals, toxins, BPA, and/or unnatural or other ingredients that render them injurious to the health of pets; and

(b)    the true composition and quality of the Contaminated Cat Foods as represented by Defendants fall below and differ from that which their labels purport and represent to possess.

**Answer:**    The allegations in Paragraph 121 in the FAC relate to a count that was voluntarily dismissed by the Plaintiff, and therefore no response thereto is required. To the extent a response is required, Champion denies the allegations in Paragraph 121 of the FAC, including subparagraphs (a) and (b).

122.    The Contaminated Cat Foods are "misbranded" because Defendants falsely represented on their packaging and labels that their Contaminated Cat Foods are:

(a)    "Biologically Appropriate™";

(b)    "Fresh Regional Ingredients" and "Delivered daily";

(c)    "Never Outsourced";

(d)    "Nourish[ing] as Nature Intended";

(e)    "Delivering Nutrients Naturally";

(f)    "Made with Fresh and Natural Ingredients"; and

(g)    "Premium Meat and Fish Ingredients".

**Answer:**    The allegations in Paragraph 122 in the FAC relate to a count that was voluntarily dismissed by the Plaintiff, and therefore no response thereto is required. To the extent a response is required, Champion denies the allegations in Paragraph 122 of the FAC, including subparagraphs (a) through (g).

123.    Defendants failed to exercise due care when they sold the Contaminated Cat Foods to Plaintiff and the Class Members based on: (1) their exclusive knowledge of the ingredients, content, and sourcing materials of the Contaminated Cat Foods; and (2) their failure to properly audit and monitor any third-party suppliers as publicly represented to Plaintiff and the Class.

**Answer:**    The allegations in Paragraph 123 in the FAC relate to a count that was voluntarily dismissed by the Plaintiff, and therefore no response thereto is required. To the extent a response is required, Champion denies the allegations in Paragraph 123 of the FAC.

124.    Defendants' violations of these statutes were a substantial factor in the harm suffered by Plaintiff and the Class, including purchasing a product with *de minimis* value.

**Answer:**    The allegations in Paragraph 124 in the FAC relate to a count that was voluntarily dismissed by the Plaintiff, and therefore no response thereto is required. To the extent a response is required, Champion denies the allegations in Paragraph 124 of the FAC.

125. By virtue of Defendants' negligence per se, Plaintiff and the Class have been damaged in an amount to be proven at trial or alternatively, seek rescission and disgorgement under this Count.

**Answer:**     The allegations in Paragraph 125 in the FAC relate to a count that was voluntarily dismissed by the Plaintiff, and therefore no response thereto is required. To the extent a response is required, Champion denies the allegations in Paragraph 125 of the FAC.

## COUNT III

### Fraud against Defendants on Behalf of the Class

126. Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

**Answer:**     Champion adopts and reasserts each and every allegation contained above, as though fully set forth herein.

127. Defendants falsely represented to Plaintiff and the Class that their Contaminated Cat Foods are:

(a)     "Biologically Appropriate™";

(b)     "Fresh Regional Ingredients" and "Delivered daily";

(c)     "Never Outsourced";

(d)     "Nourish[ing] as Nature Intended";

(e)     "Delivering Nutrients Naturally";

(f)     "Made with Fresh and Natural Ingredients"; and

(g)     "Premium Meat and Fish Ingredients."

**Answer:**     Champion denies the allegations in Paragraph 127 of the FAC, including subparagraphs (a) through (g).

48

128.   Defendants intentionally and knowingly made these misrepresentations to induce Plaintiff and the Class members to purchase their Contaminated Cat Foods.

**Answer:**   Champion denies the allegations in Paragraph 128 of the FAC.

129.   Defendants knew that their representations about the Contaminated Cat Foods were false in that the Contaminated Cat Foods contain or have a high risk of containing levels of heavy metals, toxins, BPA, non-regional and non-fresh ingredients, and/or unnatural or other ingredients that do not conform to the labels, packaging, advertising, and statements.   Defendants allowed their packaging, labels, advertisements, promotional materials, and websites to intentionally mislead consumers, such as Plaintiff and the Class.

**Answer:**   Champion denies the allegations in Paragraph 129 of the FAC.

130.   Plaintiff and the Class relied on these misrepresentations and purchased the Contaminated Cat Foods to their detriment.   Given the deceptive manner in which Defendants advertised, represented, and otherwise promoted the Contaminated Cat Foods, the reliance by Plaintiff and the members of the Class on Defendants' misrepresentations was justifiable.

**Answer:**   Champion denies the allegations in Paragraph 130 of the FAC.

131.   As a direct and proximate result of Defendants' conduct, Plaintiff and the Class have suffered actual damages in that they have purchased Contaminated Cat Foods that are worth less than the price they paid and that they would not have purchased at all had they known of the presence of heavy metals, toxins, BPA, non-regional and non-fresh ingredients, and/or unnatural or other ingredients that do not conform to the labels, packaging, advertising, and statements.

**Answer:**   Champion denies the allegations in Paragraph 131 of the FAC.

132.   Plaintiff and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

**Answer:**    Champion admits that Plaintiff and the putative class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other relief available, but denies that Plaintiff and the putative class are entitled to any relief whatsoever.

## COUNT IV

**Violations of Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/1, *et seq.*, Against Defendants on Behalf of the Class**

133.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

**Answer:**    Champion adopts and reasserts each and every allegation contained above, as though fully set forth herein.

134.    The conduct described herein constitutes a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/1, et seq. (hereinafter, "ICFA").

**Answer:**    Champion denies the allegations in Paragraph 134 of the FAC.

135.    Defendants engaged in a deceptive act or practice in violation of ICFA by knowingly misrepresenting, concealing, or failing to disclose the Contaminated Cat Foods' true quality, and ingredients by cats.

**Answer:**    Champion denies the allegations in Paragraph 135 of the FAC.

136.    Specifically, Defendants falsely claim, on both their labels and their websites, that their Contaminated Cat Foods are:

    (a)    "Biologically Appropriate™";

    (b)    "Fresh Regional Ingredients" and "Delivered daily";

    (c)    "Never Outsourced";

    (d)    "Nourish[ing] as Nature Intended";

    (e)    "Delivering Nutrients Naturally";

(f)  "Made with Fresh and Natural Ingredients"; and

(g)  "Premium Meat and Fish Ingredients."

**Answer:**  Champion denies the allegations in Paragraph 136 of the FAC, including subparagraphs (a) through (g).

137.  Defendants' deceptive acts and practices are continuing.

**Answer:**  Champion denies the allegations in Paragraph 137 of the FAC.

138.  Defendants intended for Plaintiff and the Class members to rely on and accept as true these advertisements and representations in deciding whether to purchase the Contaminated Cat Foods, and at what price.

**Answer:**  Champion denies the allegations in Paragraph 138 of the FAC.

139.  Defendants' misrepresentations, concealment, omissions, and other deceptive conduct were likely to deceive consumers with respect to the Contaminated Cat Foods' quality and ingredients.

**Answer:**  Champion denies the allegations in Paragraph 139 of the FAC.

140.  Defendants' misrepresentations, concealment, omissions, and other deceptive conduct were likely to cause consumers to purchase and/or overpay for the Contaminated Cat Foods.

**Answer:**  Champion denies the allegations in Paragraph 140 of the FAC.

141.  Defendants' misrepresentations, concealment, omissions, and other deceptive acts occurred before Plaintiff and the Class decided to purchase the Contaminated Cat Foods.

**Answer:**  Champion denies the allegations in Paragraph 141 of the FAC.

142. Defendants' misrepresentations, concealment, omissions, and other deceptive conduct did in fact deceive Plaintiff and the Class with respect to the Contaminated Cat Foods' quality and ingredients.

**Answer:** Champion denies the allegations in Paragraph 142 of the FAC.

143. Defendants' misrepresentations, concealment, omissions, and other deceptive conduct did in fact deceive and cause Plaintiff and the Class members to purchase and/or overpay for the Contaminated Cat Foods.

**Answer:** Champion denies the allegations in Paragraph 143 of the FAC.

144. Defendants' misrepresentations, concealment, omissions, and other deceptive conduct described herein repeatedly occurred in Defendants' trade or business and were capable of deceiving a substantial portion of the consuming public.

**Answer:** Champion denies the allegations in Paragraph 144 of the FAC.

145. The facts misrepresented, concealed, or not disclosed by Defendants with respect to the presence of heavy metals, toxins, BPA, non-regional and non-fresh ingredients, and/or unnatural or other ingredients that do not conform to the labels, packaging, advertising, and statements are material facts because Plaintiff and any reasonable consumer would have considered those facts important in deciding whether to purchase the Contaminated Cat Foods, and at what price.

**Answer:** Champion denies the allegations in Paragraph 145 of the FAC.

146. If Plaintiff and the Class members had known that the Contaminated Cat Foods did not in fact match the quality and ingredients described above, they would not have paid the price premium they paid for the Contaminated Cat Foods.

**Answer:** Champion denies the allegations in Paragraph 146 of the FAC.

147.    If Plaintiff and the Class members had known that the Contaminated Cat Foods did not in fact match the quality and ingredients described above, they would not have purchased the Contaminated Cat Foods at all.

**Answer:**    Champion denies the allegations in Paragraph 147 of the FAC.

148.    As a result of Defendants' conduct, Plaintiff and the Class members have suffered actual damages, in that they purchased Contaminated Cat Foods at a price far greater than they would have paid if they had knowledge of the presence of heavy metals, toxins, BPA, non-regional and non-fresh ingredients, and/or unnatural or other ingredients that do not conform to the labels, packaging, advertising, and statements in the Contaminated Cat Foods.

**Answer:**    Champion denies the allegations in Paragraph 148 of the FAC.

149.    As a result of Defendants' conduct, Plaintiff and the Class members have suffered actual damages, in that they purchased Contaminated Cat Foods that they would not have purchased at all if they had knowledge of the presence of heavy metals, toxins, BPA, a non-regional and non-fresh ingredients, and/or unnatural or other ingredients that do not conform to the labels, packaging, advertising, and statements in the Contaminated Cat Foods.

**Answer:**    Champion denies the allegations in Paragraph 149 of the FAC.

150.    As a direct and proximate result of the deceptive, misleading, unfair, and unconscionable practices of the Defendants set forth above, Plaintiff and the Class members are entitled to actual damages, compensatory damages, penalties, attorneys' fees, and costs, as set forth in Section 10a of the ICFA.

**Answer:**    Champion denies the allegations in Paragraph 150 of the FAC.

151.    Defendants' deceptive, misleading, unfair, and unconscionable practices set forth above were done willfully, wantonly, and maliciously, entitling Plaintiff and the Class members to an award of punitive damages.

**Answer:**    Champion denies the allegations in Paragraph 151 of the FAC.

## COUNT V

### Unjust Enrichment Against Defendants on Behalf of the Class

152.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

**Answer:**    Champion adopts and reasserts each and every allegation contained above, as though fully set forth herein.

153.    Substantial benefits have been conferred on Defendants by Plaintiff and the Class through the purchase of the Contaminated Cat Foods.  Defendants knowingly and willingly accepted and enjoyed these benefits.

**Answer:**    Champion denies the allegations in Paragraph 153 of the FAC.

154.    Defendants either knew or should have known that the payments rendered by Plaintiff were given and received with the expectation that the Contaminated Cat Foods would have the qualities, characteristics, and ingredients represented by Defendants.  As such, it would be inequitable for Defendants to retain the benefit of the payments under these circumstances.

**Answer:**    Champion denies the allegations in Paragraph 154 of the FAC.

155.    Defendants' acceptance and retention of these benefits under the circumstances alleged herein make it inequitable for Defendants to retain the benefits without payment of the value to Plaintiff and the Class.

**Answer:**    Champion denies the allegations in Paragraph 155 of the FAC.

156.     Plaintiff and the Class are entitled to recover from Defendants all amounts wrongfully collected and improperly retained by Defendants, plus interest thereon.

**Answer:**     Champion denies the allegations in Paragraph 156 of the FAC.

157.     Plaintiff and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

**Answer:**     Champion admits that Plaintiff and the putative class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other relief available, but denies that Plaintiff and the putative class are entitled to any relief whatsoever.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, prays for judgment against the Defendants as to each and every count, including:

A.     An order declaring this action to be a proper class action, appointing Plaintiff and his counsel to represent the Class, and requiring Defendants to bear the costs of class notice;

B.     An order enjoining Defendants from selling the Contaminated Cat Foods until the heavy metals, toxins, BPA, non-regional and non-fresh ingredients, and/or unnatural or other ingredients are removed or full disclosure of the risk or and/or presence of such appear on all labels, packaging, and advertising;

C.     An order enjoining Defendants from selling the Contaminated Cat Foods in any manner suggesting or implying that they are healthy, nutritious, superior quality, natural, and/or unadulterated, and made with fresh and regional ingredients that were never outsourced;

D.     An order requiring Defendants to engage in a corrective advertising campaign and engage in any further necessary affirmative injunctive relief, such as recalling existing products;

E.     An order awarding declaratory relief, and any further retrospective or prospective injunctive relief permitted by law or equity, including enjoining Defendants from continuing the unlawful practices alleged herein, and injunctive relief to remedy Defendants' past conduct;

F.     An order requiring Defendants to pay restitution to restore all funds acquired by means of any act or practice declared by this Court to be an unlawful, unfair, or fraudulent business act or practice, untrue or misleading advertising, or a violation of Illinois law, plus pre- and post-judgment interest thereon;

G.     An order requiring Defendants to disgorge or return all monies, revenues, and profits obtained by means of any wrongful or unlawful act or practice;

H.     An order requiring Defendants to pay all actual and statutory damages permitted under the counts alleged herein;

I.     An order requiring Defendants to pay punitive damages on any count so allowable;

J.     An order awarding attorneys' fees and costs, including the costs of pre-suit investigation, to Plaintiff and the Class; and

K.     An order providing for all other such equitable relief as may be just and proper.

**<u>Answer:</u>**     Regarding Plaintiff's Prayer for Relief, including subparagraphs A through K, Champion denies that any grounds exist to certify a class or for entering judgment against Champion, or for monetary damages, pre-judgment or post-judgment interest, attorney's fees or costs, or any other relief against Champion and for Plaintiff.

## AFFIRMATIVE DEFENSES

Champion hereby pleads their Affirmative Defenses to the FAC without assuming the burden of proof when the law places the burden upon Plaintiff, and without prejudice to its Answer, as follows:

1.      Plaintiff's and the putative class's claims are barred in whole or in part by the applicable statute of limitations as Plaintiff's proposed class definition goes back to July 1, 2013, which exceeds the statute of limitations for some or all of Plaintiff's claims.

2.      Plaintiff's and the putative class's claims are barred in whole or in part by the doctrines of waiver and estoppel as consumers who were aware of the presence of heavy metals through Champion's disclosures in the White Paper, the purported information published by the Clean Label Project, or through other means and continued to purchase Champion's cat food have waived their claims premised on alleged misrepresentations located on Champion's products' packaging and/or on its website and are estopped from asserting such claims.

3.      Plaintiff's and the putative class's claims are barred in whole or in part because Plaintiff and the putative class lack Article III standing. When Plaintiff and the putative class purportedly purchased Champion's cat food, they received what was advertised on the products' packaging.

4.      To the extent the SAC seeks injunctive or other equitable relief, neither Plaintiff nor any putative class members are entitled to such relief because, among other reasons, the hardship that would be imposed on Champion by any such relief would be greatly disproportionate to any hardship that Plaintiff or putative class members might suffer in its absence. Furthermore, claims for equitable relief are barred because an adequate remedy at law exists.

5.      To the extent Plaintiff and the members of the putative class claim exemplary or punitive damages, such awards are prohibited under the Fifth, Eighth and Fourteenth Amendments to the United States Constitution. Plaintiff and the putative class members also fail to allege facts to entitle them to such an award.

6.     Champion reserves the right to assert additional affirmative defenses based on information learned during discovery.

Dated:  March 12, 2019                                    Respectfully submitted,

                                                      s/ David A. Coulson
                                                      David A. Coulson (ARDC #6199911)
                                                      GREENBERG TRAURIG, PA
                                                      333 S.E. 2nd Avenue, Suite 4400
                                                      Miami, Florida 33131
                                                      Telephone: (305) 579-0754
                                                      Facsimile: (305) 579-0717
                                                      Email: coulsond@gtlaw.com

                                                      Francis A. Citera (ARDC # 6185263)
                                                      GREENBERG TRAURIG, LLP
                                                      77 West Wacker Drive, Suite 3100
                                                      Chicago, Illinois 33131
                                                      Telephone: (312) 456-8413
                                                      Facsimile: (312) 456-8435
                                                      Email: citeraf@gtlaw.com

                                                      *Attorneys for Defendants*
                                                      *Champion Petfoods USA Inc. and*
                                                      *Champion Petfoods LP*

## CERTIFICATE OF SERVICE

I hereby certify that on March 12, 2019, I electronically filed the foregoing **Answer to Plaintiff's First Amended Complaint** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the e-mail addresses of the registered users.

Dated:  March 12, 2019                          s/ David A. Coulson
                                                DAVID A. COULSON
                                                –